19-4285
*Najjar Group v. West 56th Hotel*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand twenty-one.

PRESENT: ROBERT D. SACK,
RICHARD C. WESLEY,
STEVEN J. MENASHI,
*Circuit Judges.*

---

THE NAJJAR GROUP, LLC, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO THE NAJJAR GROUP, LTD,

*Plaintiff-Appellant*,

v. No. 19-4285

WEST 56TH HOTEL LLC, DBA CHAMBERS HOTEL,

*Defendant-Appellee.*[*]

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

*For Plaintiff-Appellant*: David Gordon, Gordon & Haffner, LLP, Harrison, New York.

*For Defendant-Appellee*: Steven G. Sonet, Levy Sonet & Siegel, LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Abrams, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

The Najjar Group, LLC ("Najjar"),[1] appeals the district court's verdict in favor of West 56th Hotel ("West"). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal. For the reasons set forth below, we affirm the district court's judgment.

[1] Because any difference between the rights held by The Najjar Group, LLC and its predecessor-in-interest, The Najjar Group, LTD, does not impact our decision, this order treats them as the same entity.

## BACKGROUND

The parties to this case are the only two members of BDC 56 LLC (the "LLC"), an entity formed in 1997 for the purpose of constructing and operating a hotel. Najjar holds a 20 percent interest in the LLC. At the LLC's inception, Najjar sold the LLC its right to acquire the land on which the hotel would be built. Najjar did not assume any significant responsibilities relating to the construction and management of the hotel.

West holds an 80 percent interest in the LLC. Per the LLC's operating agreement (the "Agreement"), West has "exclusive[] … full[,] and complete authority, power, and discretion to manage and control the business and affairs of the [LLC]." Plaintiff Exhibit 1 at 6. The Agreement specifically bars Najjar from "bring[ing] any action … to compel any sale … of the [LLC's] assets." *Id.* at 9. Only West, as manager, has the power to subject the LLC's assets to the authority of a court.

The Agreement provided that the proceeds from the hotel's operation would first pay back any capital contributions made by either party, at a compounding annual rate of return of 8 to 10 percent. Any remaining proceeds would be distributed to each member in accordance with its interest in the LLC.

In the Agreement, West assumed the responsibility to obtain third-party financing to construct the hotel; if any monetary shortfall occurred, the Agreement required West to contribute all capital necessary to construct and operate the hotel for its first three years of operation. The parties anticipated that West would need to contribute $4 million, but West ended up investing almost $15 million in construction and startup costs. Najjar did not make any capital contributions nor did it object to West's contributions.

The LLC's net income from the hotel has often not sufficed to pay West's preferred return on its capital contributions, much less pay down West's capital account balance. Accordingly, neither West nor Najjar have ever received any profit distributions according to their respective membership interests. All the hotel's proceeds have been directed toward paying West's balance in its capital account, which increases at a rate of 8 to 10 percent per year with respect to whatever amount has yet to be paid. West concedes that the balance on its capital account may continue to increase until that balance exceeds the value of the hotel. If that occurs, and the LLC then sells the hotel, all the proceeds will go to West.

Najjar sued West, claiming that West breached the Agreement by not selling the hotel once it had become apparent that the hotel's continued operation might

destroy the value of Najjar's equity interest in the LLC. Najjar presented its case, and West defended it, in terms of the implied covenant of good faith and fair dealing and West's fiduciary duties to Najjar under the Agreement. After a bench trial, the district court entered judgment in West's favor. *Najjar Grp., LLC v. W. 56th Hotel LLC*, No. 14-CV-7120, 2019 WL 6271373, (S.D.N.Y. Nov. 25, 2019). Najjar timely appealed.

## DISCUSSION

### I

"On appeal from a bench trial, we review findings of fact for clear error and conclusions of law *de novo*." *Fed. Hous. Fin. Agency ex rel. Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 138 n.54 (2d Cir. 2017). "Contract interpretation [is] a question of law [that we] review[] *de novo*." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007). At the same time, "whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg.*, Inc., 487 F.3d 89, 98 (2d Cir. 2007). Thus, we will review the district court's interpretation of the Agreement and West's

fiduciary duties under it *de novo*, and its specific findings regarding West's and Najjar's relevant actions for clear error.

**II**

In this case, the district court correctly determined that West neither breached the Agreement's implied covenant of good faith and fair dealing nor violated any fiduciary duties owed to Najjar.

**A**

Under New York law, "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995). "Encompassed within [this] implied obligation … are any promises which a reasonable person in the position of the promisee would be justified in understanding were included," and "[t]his embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (internal quotation marks omitted).[2] When a party is given some

[2] In ruling for West, the district court partially relied on our precedent holding that "in order to find a breach of the implied covenant [under New York Law], a party's action must directly violate an obligation that may be presumed to have been intended by the parties." *Najjar Grp., LLC*, 2019 WL 6271373, at *5 (alteration omitted) (quoting *Gaia House*

discretion under the contract, "this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Id.* Similarly, a party breaches the implied covenant when it exercises its discretion "malevolently, for its own gain as part of a purposeful scheme designed to deprive [its counterparty] of the benefits" of a contract. *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 302 (N.Y. App. Div. 1st Dep't 2003). At the same time, "[t]he duty of good faith and fair dealing … is not without limits," and neither party may invoke the implied covenant to impose an "obligation … that would be inconsistent with other terms of the contractual relationship." *Dalton*, 663 N.E.2d. at 291-92 (internal quotation marks omitted).

Najjar claims that West violated the implied covenant because its continued operation of the hotel has "the effect of destroying or injuring [Najjar's] right … to receive the fruits" of the Agreement. *Id.* at 291. With the hotel continuing to

*Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 93 (2d Cir. 2013). We announced this rule in *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (per curiam). This language has subsequently appeared in numerous opinions from district courts in our circuit and several opinions from our court. It does not seem to appear in any reported decisions from New York state courts. To the extent that our formulation in *Galesi* might imply a different standard than set out by the Court of Appeals in *Dalton*, the *Dalton* standard controls our decision.

operate, West's capital account balance may increase to the point where Najjar might never receive any proceeds from the hotel. Under the Agreement, however, it is West's right and obligation to manage the LLC at its "exclusive[] … full[,] and complete … discretion." Plaintiff Exhibit 1 at 6. Therefore, to prevail on its implied covenant theory Najjar needed to show that West, by not selling the hotel, exercised its discretion in managing the LLC "arbitrarily or irrationally," *Dalton*, 663 N.E.2d. at 291, or "malevolently, for its own gain as part of a purposeful scheme designed to deprive [Najjar] of the benefits of the joint venture," *Richbell*, 309 A.D.2d at 302.

Najjar, however, failed to make that showing. The district court found that "the evidence show[ed] that [West] merely did what the operating agreement required it to do: it put up the additional capital required to complete the construction of the hotel, and it distributed net cash flow according to the priorities provided for in the contract." *Najjar Grp.*, 2019 WL 6271373, at *6. And though West's capital balance exceeded the parties' expectations, "no evidence presented at trial suggested that [West] misled [Najjar] in order to arrive at th[e incorrect] estimate or that it was otherwise responsible for its inaccuracy." *Id.* For its part, Najjar failed to "produce evidence sufficient to show that" West exercised its

discretion under the contract in any manner that would violate the implied covenant. *Id.* "Whether the bad motive imputed to [a party] was its actual motive is an issue of intent generally left to the trier of fact," *Richbell*, 309 A.D.2d at 303, and Najjar does not point to any evidence that undermines the district court's factual conclusions on this issue.

The district court also correctly rejected Najjar's argument that "the parties intended to require the sale of the hotel if it became likely that distributions according to membership interest would become substantially delayed or would never materialize." *Najjar Grp.*, 2019 WL 6271373, at *5. To the contrary, the evidence showed that not receiving any distributions from the LLC if the hotel performed poorly was a "risk[]" Najjar assumed in exchange for West "accommodat[ing Najjar's] desire to neither manage the project nor put any money into it." *Id.* at *5-6.

Furthermore, Najjar cannot use the implied covenant to impose any obligation on West to sell the hotel because any such obligation "would be inconsistent with other terms of the" Agreement. *Dalton*, 663 N.E.2d. at 292. The Agreement specifically provides that "no member individually shall have the right … [t]o bring any action … to compel any sale … of the [LLC's] assets" or "to subject

the assets of the [LLC] … to the authority any court." Plaintiff Exhibit 1 at 9. It would be inconsistent with these provisions for Najjar to be able to prevail in a suit against West for violating the implied covenant of good faith and fair dealing by failing to sell the hotel.

**B**

Under New York law, managing members of LLCs such as West owe fiduciary duties to non-managing members such as Najjar. *See* N.Y. Ltd. Liab. Co. Law §§ 409, 411; *Pokoik v. Pokoik*, 115 A.D.3d 428, 429 (N.Y. App. Div. 1st Dep't 2014). Included in these duties is a "duty of undivided and undiluted loyalty … barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Pokoik*, 115 A.D.3d at 429 (quoting *Birnbaum v. Birnbaum*, 539 N.E.2d 574, 576 (N.Y. 1989)).

Najjar claims that West violated this duty when it continued to operate the hotel and pay itself preferred returns while simultaneously making it less likely that Najjar would ever see any proceeds from the LLC. In its support, Najjar identifies a case in which a New York appellate court indicated that managing members of LLCs should prefer rights common to all members of the LLC over

their own preferred rights to the LLC's proceeds. *See Nathanson v. Nathanson*, 20 A.D.3d 403, 404 (N.Y. App. Div. 2d Dep't 2005) (declining to dismiss a fiduciary duty claim, at the pleading stage, based on the "plaintiff's allegations that [an LLC manager] engaged in self-dealing by deferring payment of certain priority distributions so that interest on the unpaid distributions could accrue at a 12% interest rate."); *cf. In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 41 (Del. Ch. 2013) ("[G]enerally it will be the duty of the board, where discretionary judgment is to be exercised, to prefer the interests of the common stock … to the interests created by the special rights … of preferred stock.").

As with its implied covenant theory, however, Najjar's claim for breach of fiduciary duty must be determined with reference to the terms of the Agreement. This is because "the [default] rules … laid down for determining the rights and duties of partners and for distribution of assets are applicable only in the absence of an agreement between the partners on the same subject matter." *Lanier v. Bowdoin*, 24 N.E.2d 732, 734-35 (N.Y. 1939); *see also Riviera Cong. Assocs. v. Yassky*, 223 N.E.2d 876, 880 (N.Y. 1966) ("[P]artners may include in the partnership articles practically 'any agreement they wish' and, if the asserted self-dealing was actually

contemplated and authorized, it would not, ipso facto, be impermissible and deemed wrongful.") (internal citation omitted) (quoting *Lanier*, 24 N.E.2d at 735).[3]

For the same reasons as described above with reference to Najjar's implied covenant theory, the Agreement demonstrates that West did not have a fiduciary duty to sell the hotel and that it did not violate any fiduciary duty by continuing to operate the hotel even under the specific circumstances of this case. *See Richbell*, 309 A.D.2d at 302-03 (applying the same analysis to the plaintiff's implied covenant and fiduciary duty claims where a written agreement addressed the scenario that arose). In cases similar to the one here, New York courts have held that a partner does not violate its fiduciary duties when it acts consistent with its delegated authority under a contract, even if its actions end up harming other partners. *See Seeking Valhalla Tr. v. Deane*, 182 A.D.3d 457, 458 (NY. App. Div. 1st Dep't 2020); *Carella v. Scholet*, 5 A.D.3d 972, 975 (N.Y. App. Div. 3d Dep't 2004); *Sterling Fifth Assocs. v. Carpentille Corp.*, 9 A.D.3d 261, 262-63 (N.Y. App. Div. 1st Dep't 2004). Of course, a party will violate its fiduciary duties if it exercises its

[3] Though the Court of Appeals made these statements with reference to partnerships, Najjar does not identify any authority indicating that the same reasoning would not apply in the context of LLCs.

discretion "malevolently, for its own gain as part of a purposeful scheme designed to deprive [a member] of the benefits of the [LLC]," *Richbell*, 309 A.D.2d at 302, but the district court did not err in concluding that such was not the case here.

**C**

Najjar challenges the district court's ruling on the ground that the court should have placed the burden of proof on West. Najjar argues that because West had a "conflict of interest" relating to its roles as the LLC's manager and a recipient of preferred returns from the LLC, bad faith and a breach of fiduciary duty should be presumed unless West can prove that its decision to continue to operate the hotel was in the best interest of Najjar and West, without considering West's right to preferred returns. In support, Najjar cites our precedent holding that, if a director had an interest in a challenged corporate transaction, that transaction does not qualify for the business judgment rule, but instead "the director [must] prove that the transaction was fair and reasonable to the corporation." *See Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 702-03 (2d Cir. 1980).

While *Crouse-Hinds* may set out the default rule for adjudicating challenges to self-dealing transactions, in this case, the district court found that West's "simultaneous roles as manager and sole capital contributor … were designed

with [Najjar's] full knowledge specifically in order to accommodate [Najjar's] desire to neither manage the project nor put any money into it." *Najjar Grp.*, 2019 WL 6271373, at *6. And the preferred returns the Agreement grants West for its capital contributions were provided "[i]n exchange for [West's] assumption of 100% of the risk" to finance the construction and startup of the hotel. *Id.* at *5. Again, Najjar fails to identify any evidence that undermines these conclusions. Therefore, West's "conflict of interest" was contemplated by both parties to the Agreement and directly results from that negotiated compact. Under these circumstances, the burden of proof remained with Najjar to show that West violated the implied covenant or its fiduciary duties. And Najjar did not satisfy its burden.

### III

Before the bench trial, the parties submitted evidence relating to the correct balance of West's capital account with the LLC. The parties disputed this balance, with Najjar claiming that it had been inflated due to accounting errors that occurred from 2002 to 2004. The district court did not conclusively determine the correct balance but rather found only that "[b]y 2018, *according to [the] LLC's*

*records*, [West's] capital account balance amounted to approximately $35.4 million." *Id.* at *5 (emphasis added).

Najjar claims that by not conclusively determining the correct balance, the district court failed to adjudicate Najjar's "claim for a correct declaration of West's Capital Contributions" and asks that we remand for the court to conclusively determine West's capital account balance. Reply Brief for Plaintiff-Appellant 18. Najjar, however, did not proceed to trial on any "claim for a correct declaration of West's Capital Contributions." *Id.* In a pretrial conference, Najjar's counsel clarified that Najjar's arguments relating to the accounting errors and "the status of the capital accounts … is evidence, not causes of action, but simply evidence of the way that the capital accounts were treated and accrued at previous points in time." Trial Transcripts, May 2, 2019, at 12. By Najjar's own admission, it sought to show the status of West's capital accounts only as a way of proving its claim regarding the impropriety of West's decision to not sell the hotel. Najjar did not, however, separately seek a specific declaration regarding the correct balance. In fact, Najjar's counsel said outright that Najjar was "not … accusing [West] of overpaying themselves." *Id.* at 13.

Given this background, there is nothing surprising about the district court's decision not to reach a conclusive determination of West's capital account balance. The district court found that West's decision to not sell the hotel was clearly sanctioned by the Agreement and that there was no evidence that West acted in bad faith. Having reached these conclusions, it was not necessary for the district court to determine West's capital account balance. "As a general rule courts … are not required to make findings on issues the decision of which is unnecessary to the results they reach." *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976).[4]

* * *

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

UNITED STATES COURT OF APPEALS SECOND CIRCUIT

[4] Federal Rule of Civil Procedure 52, on which Najjar relies, does not suggest a different conclusion. *See* Fed. R. Civ. P. 52(a)(1) (providing that, after a bench trial, "the court must find the facts specially and state its conclusions of law separately"). That rule "requires the court to make sufficiently detailed findings to inform the appellate court of the basis of the decision and to permit intelligent appellate review." *Krieger v. Gold Bond Bldg. Prods.*, 863 F.2d 1091, 1097 (2d Cir. 1988). It does not require "either punctilious detail or slavish tracing of the claims issue by issue and witness by witness." *Id.* (alterations omitted). Nor must a district court "mention evidence it considered to be of little value." *Id.* at 1098.